PRESENT:  All the Justices

MELINDA NORTON, ET AL.

v.  Record No. 201028

OPINION BY
JUSTICE CLEO E. POWELL
MAY 27, 2021

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Melinda Norton, Cecilia Gonzalez, Amjad Arnous, John A. McEwan, Laura Quirk

Niswander, Nagla Abdelhalim, Robert Ross, Helen Ross, Sanjeev Anand, Anju Anand, Melinda

Galey and Travis Galey (collectively the "Hosts") appeal the decision of the Circuit Court of

Fairfax County dismissing their challenges to certain amendments to the Fairfax County Zoning

Ordinance and the imposition of a Transient Occupancy Tax.

## I.  BACKGROUND

The Hosts own or possess homes within Fairfax County.  Prior to March 20, 2018, the

Hosts used various online marketplace platforms to rent out their individual homes for short

periods of time.  Some of the Hosts would vacate their homes and rent the entire home; others

would remain in the homes and only rent a portion of the property.

On March 20, 2018, the Board of Supervisors of Fairfax County (the "Board") adopted a

resolution (the "Resolution") that stated, in part, "short-term lodging uses are typically referred

to as the rental or occupancy of a dwelling or portion of a dwelling for transient occupancy of

fewer than 30 days, a use currently prohibited in any dwelling pursuant to the definition of a

dwelling in Article 20 of the Zoning Ordinance."  Also included in the Resolution was a

statement recognizing that online marketplace platforms had caused a proliferation of short-term

lodging in Fairfax County. The Resolution noted that short-term lodging "could have impacts on the character of established neighborhoods and the quality of life of residents" and further advised that the Board would be conducting a public hearing "during which the Planning Commission and the Board will consider the proposed Zoning Ordinance and County Code amendments as recommended by staff" concerning short-term lodging.

At the time the resolution was adopted, Fairfax County Zoning Ordinance § 20-300 defined a dwelling as:

> A building or portion thereof, but not a MOBILE HOME, designed or used for residential occupancy. The term 'dwelling' shall not be construed to mean a hotel, rooming house, hospital, or other accommodation used for more or less transient occupancy.

(Hereafter, the "Original Definition.")

On July 21, 2018, the Board amended the Zoning Ordinance (the "STL Amendment"). As part of the STL Amendment, the Board redefined a dwelling as:

> A building or portion thereof, but not a MOBILE HOME, designed or used for residential occupancy. The term 'dwelling' does not mean a hotel, rooming house, hospital, or other accommodation used for more or less TRANSIENT OCCUPANCY, except a dwelling may be used for SHORT-TERM LODGING.

Additionally, the STL Amendment added definitions for "transient occupancy"[1] and "short-term lodging"[2] to the Zoning Ordinance. The STL Amendment also imposed

---

[1] The STL Amendment defined transient occupancy as "[u]se of a DWELLING or MOBILE HOME, or part thereof, for sleeping or lodging purposes for fewer than 30 consecutive nights."

[2] The STL Amendment defined short-term lodging as:
> The provision of a room or space that is suitable or intended for transient occupancy, in exchange for a charge for the lodging. Such use does not include ACCESSORY DWELLING UNIT, BED AND BREAKFAST, HOTEL/MOTEL, or TEMPORARY FAMILY HEALTH CARE STRUCTURE.

requirements on short-term lodging providers to pay fees, obtain permits, keep guest records, allow reasonable inspections and comply with building codes. At the same time, the Board also amended the County Code to impose a transient occupancy tax of 2% of the cost of the short-term lodging (the "TOT Amendment").

The Hosts brought a declaratory judgment action against the Board challenging the validity of the STL Amendment and the TOT Amendment on several grounds. Among other things, the Hosts claimed that the Board's adoption of the STL Amendment was unreasonable, arbitrary and capricious; that the STL Amendment was unconstitutionally vague; and that the TOT Amendment is not authorized by the Virginia Code and violates Dillon's Rule.

At trial, the Hosts' evidence primarily consisted of testimony regarding how they had previously used their property for short-term lodging purposes. After the Hosts presented their evidence, the Board moved to strike. The trial court took the motion under advisement. After noting that the only claims before the trial court involved questions of law, the Board declined to put on any evidence.

In a subsequent letter opinion, the trial court ruled in favor of the Board and dismissed the Hosts' claims with prejudice. The trial court explained, under the Original Definition of dwelling, "short-term rental of the [Hosts'] homes [was] not a by-right permitted use in any residential district." It further pointed out that the Board was aware of the fact that individuals were using their properties in this manner, as demonstrated by the Resolution. According to the trial court, the fact that the Board acknowledged that certain properties were being used in this manner demonstrated that the Board had given reasonable consideration to the matter and, therefore, its decision to amend the Zoning Ordinance was not unreasonable, arbitrary or capricious.

The trial court also noted that the Hosts' vagueness claims were based on the same incorrect interpretation of dwelling that it had previously ruled on and, therefore, it dismissed those claims as well. With regard to the TOT Amendment, the trial court determined that Code § 58.1-3819(A) permits the Board to tax the Hosts' properties. It noted that the Hosts' properties, when used for short-term lodging, are akin to hotels, motels and boarding houses and, therefore, they are considered "other facilities offering guest rooms" under the statute.

The Hosts appeal.

## II. ANALYSIS

On appeal, the Hosts argue that the trial court erred in dismissing their claims challenging the Board's adoption of the STL Amendment and the TOT Amendment. Specifically, the Hosts claim that the Board's adoption of the STL Amendment was unreasonable, arbitrary and capricious. Additionally, they contend that the STL Amendment was unconstitutionally vague. With regard to the TOT Amendment, the Hosts assert that the General Assembly did not authorize such a tax on residential properties and, therefore, it violates Dillon's Rule.

## A. STL Amendment

In their first and second assignments of error, the Hosts argue that the trial court erred in dismissing their claims related to the STL Amendment. The Hosts' primary contention is that the Board misinterpreted the Original Definition as prohibiting short-term lodging. According to the Hosts, the proper interpretation of the Original Definition establishes that they could use their properties for short-term lodging "by-right." They claim that, by misinterpreting the Original Definition, the Board failed to give any reasonable consideration to the existing use and character of their properties, as required under Code § 15.2-2284, before amending the Zoning Ordinance. Therefore, the Hosts insist that the Board's misinterpretation of the Original

4

Definition was *de facto* evidence that the Board had acted unreasonably in amending the Zoning Ordinance.

> The general principles applicable to a judicial review of the validity of zoning ordinances are well settled. The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.

*Board of County Sups. of Fairfax County v. Carper*, 200 Va. 653, 660 (1959).

"Inherent in the presumption of legislative validity stated in *Carper* is a presumption of reasonableness." *Board of Sups. of Fairfax County v. Snell Const. Corp.*, 214 Va. 655, 659 (1974). "[T]he presumption of reasonableness is not absolute," however, as it may be "challenged by probative evidence of unreasonableness." *Id.* Once the burden of presenting probative evidence of unreasonableness has been met, the burden shifts to the legislative body to present "some evidence of reasonableness." *Id.*

> If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance must be sustained. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained.

*Id.* (internal quotation marks removed).

When the Original Definition is properly interpreted, it is readily apparent that the Board's interpretation was correct. The first sentence of the Original Definition begins by broadly defining a dwelling as "[a] building or portion thereof, but not a MOBILE HOME, designed or used for residential occupancy." As the Hosts correctly point out, under this broad definition any duration of residential occupancy, including short-term lodging, would be

permitted in a dwelling. *See, e.g.*, *Scott v. Walker*, 274 Va. 209, 216 (2007) (explaining that the short-term residential use is a subcategory of residential use of a property). However, by explicitly excluding "hotel[s], rooming house[s], hospital[s], or other accommodation[s] used for more or less transient occupancy" from the definition of dwelling, the second sentence carves out an exception to the broad definition established in the first sentence.[3] Specifically, the second sentence modifies the residential occupancy requirement, such that only non-transient residential occupancy is permitted in a dwelling. A necessary corollary to this modification is that transient residential occupancy is prohibited in a dwelling.

In contrast, the Hosts offer a significantly different interpretation of the Original Definition. They take the position that the first sentence of the Original Definition, and only the first sentence, defines what a dwelling is. As this sentence lacks any prohibition on transient occupancy, they insist that the Original Definition permits transient residential occupancy. They further contend that the second sentence is mutually exclusive of the first: it defines what is not a dwelling. However, as we have repeatedly explained, "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *VEPCO v. Board of Cnty. Sups.*, 226 Va. 382, 387–88 (1983). *See also Northampton County Bd. of Zoning Appeals v. E. Shore Dev. Corp.*, 277 Va. 198, 202–03 (2009) ("This rule of

---

[3] There can be little doubt that a residential property used for short-term lodging falls squarely within the definition of "other accommodation used for more or less transient occupancy." Notably, the definition of hotel in the Zoning Ordinance explicitly includes "any establishment *which provides residential living accommodations for transients on a short-term basis*, such as an apartment hotel." (Emphasis added.) The only feature that appears to distinguish a hotel, as defined by the Zoning Ordinance, from a residential property used for short-term lodging is the number of separate units that must be available for lodging. A hotel must have at least "six (6) or more separate units or rooms for transients on a daily, weekly or similar short-term basis," whereas, logically, a residential property used for short-term lodging only requires at least one unit or room.

construction applies to local ordinances and acts of the General Assembly alike."). Here, the Hosts' piecemeal approach to interpreting the Original Definition fails to read the definition as a consistent and harmonious whole. Accordingly, we reject their interpretation.

Thus, the record establishes that the Board correctly interpreted the Original Definition, and, therefore, the Hosts failed to meet their burden of establishing that the Board's actions in amending the Zoning Ordinance were unreasonable, arbitrary or capricious. As such, it was unnecessary for the Board to present any evidence on its behalf because the inherent presumption of reasonableness remained intact. *See Bell v. City Council of City of Charlottesville*, 224 Va. 490, 495 (1982). Accordingly, the trial court did not err in dismissing the Hosts' claim that the Board's adoption of the STL Amendment was unreasonable, arbitrary and capricious.

The Hosts further argue that the trial court erred in dismissing their claim that the STL Amendment was unconstitutionally vague. The Hosts contend that the definition of "dwelling" under the STL Amendment is internally contradictory because it defines a dwelling as including both by-right short-term lodging and short-term lodging subject to permitting and other restrictions.

> The constitutional prohibition against vagueness derives from the requirement of fair notice embodied in the Due Process Clause. *See United States v. Williams*, 553 U.S. 285, 304 (2008); *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The doctrine requires that a statute or ordinance be sufficiently precise and definite to give fair warning to an actor that contemplated conduct is criminal. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Grayned*, 408 U.S. at 108. Thus, the language of a law is unconstitutionally vague if persons of "common intelligence must necessarily guess at [the] meaning [of the language] and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926); *accord Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *Cameron v. Johnson*, 390 U.S. 611, 616 (1968).

*Tanner v. City of Virginia Beach*, 277 Va. 432, 439 (2009).

7

Our analysis of this issue begins and ends with the apt observation made by the trial court that the Hosts' argument "is predicated upon the same selective reading of the definition of 'dwelling' that the [Hosts] make in support of their argument that, prior to the STL Amendment, short-term rentals were a by-right use of [their] property." As explained above, the Original Definition did not permit by-right short-term lodging. Thus, there is no basis for the Hosts' argument that the amended definition permits anything more than short-term lodging subject to permitting and other restrictions. Accordingly, the trial court did not err in dismissing the Hosts' claims related to the STL Amendments.

### B. TOT Amendment

The Hosts next argue that the trial court erred in dismissing their claim related to the TOT Amendment. Specifically, the Hosts contend that Code § 58.1-3819(A) does not authorize the imposition of a transient occupancy tax on residential properties and, therefore, the tax imposed under the TOT Amendment is in violation of Dillon's Rule. Relying on the contextual construction canons of *noscitur a sociis* and *ejusdem generis*, the Hosts insist that the General Assembly clearly intended to only allow localities to levy a transient occupancy tax on commercial properties, not residential properties because all of the properties enumerated in the statute are commercial in nature.

As this Court has explained,

> Under the rule of *ejusdem generis*, when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words. Likewise, according to the maxim *noscitur a sociis* (associated words) when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words.

*Martin v. Commonwealth*, 224 Va. 298, 301-02 (1982) (citations omitted).

8

Code § 58.1-3819(A)[4] states, in relevant part:

> Any county, by duly adopted ordinance, may levy a transient occupancy tax on hotels, motels, boarding houses, travel campgrounds, and other facilities offering guest rooms rented out for continuous occupancy for fewer than 30 consecutive days. Such tax shall be in such amount and on such terms as the governing body may, by ordinance, prescribe.

The general language at issue in this statute is the reference to "other facilities offering guest rooms rented out for contiguous occupancy for fewer than 30 consecutive days." *Id.* We note, however, that this language does not describe a type of property (i.e., commercial vs. residential). Rather, it describes the manner in which property is used. When this language is considered in the context of the enumerated examples, it is apparent that the General Assembly intended to allow localities to levy a transient occupancy tax on properties that are used in the same manner as "hotels, motels, boarding houses [and/or] travel campgrounds."[5]

In the present case, it is undisputed that the Hosts use their properties in the same manner as hotels, motels, etc., albeit to a lesser degree. Indeed, the trial court made an express finding on the subject – which the Hosts do not challenge on appeal – stating:

> While the level of ancillary services provided, such as maid service, food service and other amenities varies greatly between these types of accommodations, they all provide a place for people to stay where they can live and sleep. The [Hosts'] residences likewise are offered as an accommodation to people requiring a

---

[4] As of May 1, 2021, the relevant language has been recodified as Code § 58.1-3819(A)(1). *See* 2020 Acts ch. 1214.

[5] It is further worth noting that Code § 58.1-3824 expressly states that, "[i]n addition to such transient occupancy taxes as are authorized by this chapter," the Board "may impose an additional transient occupancy tax not to exceed two percent of the amount of charge for the occupancy of any room or space occupied." The fact that the statute expressly permits "an *additional* transient occupancy tax" implies that another transient occupancy tax – i.e., the transient occupancy tax permitted under Code § 58.1-3819(A) – also applies to any rooms for rent as short-term lodging.

9

place to conduct those same activities of daily living, and thus the term "other facilities" is properly construed to include them.

Thus, while the Hosts' properties are clearly distinguishable from hotels, motels, boarding houses and travel campgrounds in many respects, those distinctions are irrelevant in determining whether Code § 58.1-3819(A) allows a locality to levy a transient occupancy tax on those properties.[6] Accordingly, the trial court did not err in dismissing the Hosts' challenge to the TOT Amendment.

## III.  CONCLUSION

For the foregoing reasons we will affirm the judgment of the trial court.

*Affirmed*.

---

[6] Although the Hosts focus on the residential nature of their properties compared to the commercial nature of hotels, motels, boarding houses and travel campgrounds, we cannot overlook the fact that the Hosts are engaged in a similar commercial transaction by providing short-term lodging for a fee.  Thus, to the extent that a distinction may be made regarding the nature of the Hosts' properties, the manner in which they are using their properties renders it a distinction without any difference.